IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| TRACY J., <br><br>　　　　Plaintiff, <br><br>v. <br><br>KILOLO KIJAKAZI,[1] <br>Acting Commissioner of Social Security, <br><br>　　　　Defendant. | REPORT AND RECOMMENDATION <br><br>Case No. 2:21-cv-00249-DBB-JCB <br><br><br>District Judge David Barlow <br><br>Magistrate Judge Jared C. Bennett |

　　　　District Judge David Barlow referred this case to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(B).[2] Before the court is Plaintiff Tracy J.'s ("Plaintiff") appeal of Acting Commissioner of Social Security Kilolo Kijakazi's ("Commissioner") final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[3] After careful consideration of the written briefs and the complete record, the court concludes that oral argument is not necessary in this case. Based upon the analysis set forth below, the undersigned recommends that the Commissioner's decision be affirmed.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), she has been substituted for Commissioner Andrew M. Saul as the Defendant in this action. ECF No. 15.

[2] ECF No. 10.

[3] 42 U.S.C. §§ 401-434.

## PROCEDURAL BACKGROUND

Plaintiff alleges disability due to various physical and mental impairments. In October 2019, Plaintiff applied for DIB, alleging disability beginning August 1, 2019.[4] Plaintiff's application was denied initially[5] and upon reconsideration.[6] On December 15, 2020, Plaintiff appeared with counsel via telephone for a hearing before an Administrative Law Judge ("ALJ").[7] On December 18, 2020, the ALJ issued a written decision denying Plaintiff's claim for DIB.[8] Plaintiff appealed the adverse ruling, and, on April 1, 2021, the Appeals Council denied his appeal,[9] making the ALJ's decision final for purposes of judicial review.[10] On April 22, 2021, Plaintiff filed his complaint in this case seeking review of the Commissioner's final decision.[11]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[12] The Commissioner's findings, "if supported by substantial evidence,

---

[4] ECF No. 13, Administrative Record ("AR ___") 177-78.

[5] AR 92, 120-23.

[6] AR 110, 112-14.

[7] AR 40-76.

[8] AR 24-39.

[9] AR 1-7.

[10] 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

[11] ECF No. 2.

[12] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).

shall be conclusive."[13] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[14] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[15] "The [f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[16]

The aforementioned standards of review apply to the Commissioner's five-step evaluation process for determining whether a claimant is disabled.[17] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[18]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant

---

[13] 42 U.S.C. § 405(g).

[14] *Lax*, 489 F.3d at 1084 (quotations and citation omitted).

[15] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).

[16] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (first alteration in original) (quotations and citation omitted).

[17] 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[18] 20 C.F.R. § 404.1520(a)(4); *see also Williams*, 844 F.2d at 750.

3

presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.[19]

At step three, the claimant must show that his or her impairment meets or equals one of several listed impairments that are "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."[20] "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ."[21] Before considering step four, however, the ALJ must determine the claimant's residual functional capacity ("RFC").[22] An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.[23] In making this finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe.[24]

At the fourth step, the claimant must show, given his RFC, that his impairments prevent performance of his "past relevant work."[25] "If the claimant is able to perform his previous work,

---

[19] *Williams,* 844 F.3d at 750-51 (quotations and citations omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(ii).

[20] 20 C.F.R. § 404.1525(a); *see also* 20 C.F.R. § 404.1520(a)(4)(iii).

[21] *Williams*, 844 F.2d at 751.

[22] 20 C.F.R. § 404.1520(e).

[23] 20 C.F.R. § 404.1545(a)(1).

[24] 20 C.F.R. § 404.1545(a)(2).

[25] 20 C.F.R. § 404.1520(a)(4)(iv).

he is not disabled."[26] If, however, the claimant is not able to perform his previous work, he "has met his burden of proof, establishing a prima facie case of disability."[27]

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step."[28] At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine "whether the claimant has the [RFC] to perform other work in the national economy in view of his age, education, and work experience."[29] If it is determined that the claimant "can make an adjustment to other work," he is not disabled.[30] If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," he is disabled and entitled to benefits.[31]

## ANALYSIS

In this case, Plaintiff's DIB application claimed disability based primarily on physical impairments. However, Plaintiff included "[d]iminished cognitive function" among his list of disabling impairments.[32] To explore this claim, the agency sent Plaintiff to Kathy D. Barnett, Ph.D. ("Dr. Barnett") for a consultative psychological examination.[33] Following the examination, Dr. Barnett issued a report in which she diagnosed no mental conditions or impairments and

---

[26] *Williams*, 844 F.2d at 751.

[27] *Id.*

[28] *Id.*

[29] *Id.* (quotations and citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

[30] 20 C.F.R. § 404.1520(a)(4)(v).

[31] *Id.*

[32] AR 77.

[33] AR 324-30.

specifically ruled out Attention Deficit Hyperactivity Disorder.[34] Likewise, Dr. Barnett did not assess any work-related functional limitations.[35] The ALJ found "persuasive" the conclusions of Dr. Barnett's psychological consultative report and did not include any mental limitations in Plaintiff's RFC.[36] Despite Dr. Barnett's conclusions and failure to assess any work-related functional limitations, Plaintiff asserts that Dr. Barnett's report identifies "clear impairment in the areas of concentration and attention" and those limitations should have been included in Plaintiff's RFC.[37]

Stated broadly, Plaintiff argues that the ALJ erred by failing to include mental limitations in Plaintiff's RFC. However, Plaintiff describes the ALJ's error as follows: "The ALJ erred by finding [Dr. Barnett's] opinion persuasive, but failing to include any mental limitations in his RFC finding, without any discussion of the report itself."[38] Although presented as a single issue, Plaintiff's written memoranda seems to present two separate but somewhat related arguments. First, Plaintiff argues that the ALJ erred by finding "persuasive" only those parts of Dr. Barnett's report that supported the ALJ's finding of non-disability. Plaintiff asserts that under the regulations, the ALJ was required to address the persuasiveness of Dr. Barnett's other opinions in the report that, according to Plaintiff, clearly identified mental limitations.[39] Second, Plaintiff

---

[34] AR 329.

[35] *Id*.

[36] AR 30-31, 34.

[37] ECF No. 18 at 6.

[38] *Id*. at 4 (title capitalization omitted).

[39] *Id*. at 6.

asserts that the ALJ erred by failing to adequately discuss Dr. Barnett's psychological consultative report in his decision.[40] As shown below, both of Plaintiff's arguments are without merit, and the Commissioner's decision should be affirmed.

I.  **The ALJ Did Not Fail to Consider Medical Opinion Evidence.**

Despite the concluding statements in Dr. Barnett's report—failing to identify or diagnose any mental impairment or work-related limitations—Plaintiff argues that Dr. Barnett "clearly describes" mental impairments and limitations earlier in her report, and the ALJ erred by failing to consider and address the persuasiveness of those parts of Dr. Barnett's report in determining Plaintiff's RFC.[41] Plaintiff asserts that Dr. Barnett's report outlined "clear limitations due to attentiveness and distraction" based on select statements in the report. For example, under the heading "Mental Status Evaluation," Dr. Barnett states: "'Concentration appeared somewhat limited though the source was not clear. [Plaintiff] appeared to have some trouble with concentration and seemed frequently distracted, occasionally hyper verbal, and intermittently fidgety. [Plaintiff] required re-directing several times.'"[42] Under the heading, "Personal History," Dr. Barnett indicates: "'[Plaintiff] presented with inattention trouble listening, talking over, interrupting, getting distracted, and fidgeting.'"[43] And finally, in "Summary," Dr. Barnett noted: "'Alternatively, [Plaintiff] presents with some attention trouble that is not unlike that found in

---

[40] *Id*. at 4 ("The ALJ did not discuss the report in his decision . . . ."); *id*. at 7 ("[T]he ALJ's decision is void of any meaningful discussion of Dr. Barnett's report . . . .").

[41] *Id*. at 5.

[42] *Id*. at 5 (quoting AR 326).

[43] *Id*. (quoting AR 327).

longstanding attention trouble. He presents with some impulsivity, increased speech, distraction, fidgeting, and trouble staying on tasks.'"[44] Plaintiff argues that these statements "[are] 'opinions' and should have been evaluated pursuant to 20 C.F.R. § 404.1520c."[45] Section 404.1520c requires the ALJ to expressly consider and articulate in his decision how persuasive he finds all of the medical opinions and prior administrative medical findings in the case record.[46] According to Plaintiff, the ALJ's failure to articulate in his decision how persuasive he found the opinions in Dr. Barnett's report that clearly identified mental limitations due to inattentiveness and distraction requires that the case be remanded for a "meaningful discussion."[47]

Plaintiff's argument fails because Dr. Barnett's various statements in the psychological consultative report do not qualify as "opinions" as that term used in this context. The regulations define "medical opinion" evidence as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
>
> > (i) Your ability to perform physical demands of work activities such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . ;

---

[44] *Id*. (quoting AR 329).

[45] ECF No. 22 at 4.

[46] 20 C.F.R. § 404.1520c(b). Prior administrative medical findings are statements by State agency medical and psychological consultants reflecting their assessment of a claimant's work-related limitations, if any. 20 C.F.R. § 404.1513(a)(5). Although they are not "medical opinions," the regulations make clear that the ALJ will articulate the persuasiveness of those findings.

[47] ECF No. 18 at 8.

    (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

    (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

    (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.[48]

  Dr. Barnett's isolated statements fail to satisfy the definition of medical opinion evidence. Although the selected statements reference attention and concentration, they fail to address what Plaintiff can do despite the identified impairment and whether Plaintiff has any impairment-related limitations. In other words, Dr. Barnett's observations described how Plaintiff presented for examination but failed to opine how the manner Plaintiff presented during the examination would impair Plaintiff's ability to perform in a "work setting." That missing information omits a critical element necessary to establish a "medical opinion" under the regulations.[49] Consequently, the ALJ was not required to discuss them.

---

[48] 20 C.F.R. § 404.1513(a)(2)(i)-(iv).

[49] Moreover, the statements that Plaintiff claims are "opinions" consist of Dr. Barnett's observational impressions, documented in writing, combined with objective test results, clinical findings, and information from sources classified by the regulations as "objective medical evidence" or "other medical evidence" 20 C.F.R. § 404.1513(a)(1) ("Objective medical evidence is medical signs, laboratory findings, or both as defined in § 404.1502(f)); 20 C.F.R. § 404.1513(a)(3) ("Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."). In her report, Dr. Barnett specifically indicates that her findings were based on evidence derived from: chart review, clinical interview, mental status evaluation, patient report, test findings, and observational data. Consequently, Plaintiff's attempt to characterize the medical evidence, medical history, and clinical findings in Dr. Barnett's report

Nevertheless, in his Reply Memorandum, Plaintiff argues for the first time that even if Dr. Barnett's statements regarding inattentiveness, distractibility, and concentration do not qualify as medical opinions, they should nonetheless be "characterized as 'symptoms.'"[50] According to Plaintiff, under Social Security Ruling 16-3, the ALJ was required but failed to "specifically address[] the symptoms described in Dr. Barnett's report," and the ALJ also failed to "give specific reasons for the weight given to Plaintiff's symptoms regarding inattentiveness and distractibility."[51] Plaintiff asserts that the ALJ's failure to do so requires that the case be remanded for a more thorough review. Because Plaintiff raises this argument for the first time in his reply brief, the court finds that Plaintiff waived this issue and therefore the court will not consider it.[52] Moreover, even if this court considers the improperly raised argument, the court lacks the authority to enforce a policy statement against the Commissioner.[53] Therefore, the ALJ did not pay short shrift to "medical opinion."

---

as "medical opinion" is misplaced. Because the statements on which Plaintiff relies were not "medical opinions," the ALJ was not required to expressly consider and articulate the persuasiveness of the isolated statements from Dr. Barnett's report.

[50] ECF No. 22 at 4.

[51] *Id.*

[52] *Madron v. Astrue,* 311 Fed. App'x 170, 174 n.4 (10th Cir. 2009) (noting that a party's failure to raise an issue in an opening brief results in waiver of that issue); *see also Anderson v. United States Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005) ("The failure to raise an issue in an opening brief waives that issue.").

[53] The court seriously doubts that Congress authorized the judiciary to review, much less remand, an ALJ decision that fails to comply with an agency policy statement. By analogy, under the Administrative Procedure Act, numerous courts have held that they can enforce against an agency only that which has the force and effect of law because "[a] binding policy is an oxymoron." *Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 537 (D.C. Cir. 1988).

## II. The ALJ's Consideration of Dr. Barnett's Report Complied with the Applicable Regulations.

Plaintiff also argues generally that the ALJ committed error by failing to provide "any meaningful discussion of Dr. Barnett's report," which, according to Plaintiff, "provides the basis" for including mental limitations in Plaintiff's RFC.[54] And Plaintiff finds fault with the ALJ for mentioning Dr. Barnett's report "only once to support his conclusion 'that Plaintiff's concerns are primarily physical.'"[55] However, Plaintiff's argument fails because the ALJ followed the regulations for assessing Dr. Barnett's report.

---

Although Social Security cases are not governed by the Administrative Procedure Act, the judicial review provisions of the Social Security Act similarly provide that the judiciary's authority to review the Commissioner's decisions is limited to: (1) factual findings and (2) "*only* the question of conformity with [the Commissioner's] regulations and the validity of such regulations." 42 U.S.C. § 405(g) (emphasis added). This congressional limitation on judicial review is significant where, as here, the United States Court of Appeals for the Tenth Circuit has clearly stated that Social Security Rulings "do not carry the force and effect of law." *Andrade v. Sec'y of Health & Hum. Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993); *cf. Vietnam Veterans of Am.*, 843 F.2d at 537 (finding that even though agency policy was binding against its employees, as far as the court is concerned, "the agency remains free in any particular case to diverge from whatever outcome the policy statement or interpretive rule might suggest" because policy is not law). Thus, the Social Security's appellate tribunal or the Commissioner certainly can enforce Social Security Rulings against an ALJ's decision because, in the Executive Branch's world under Article II of the Constitution, such policies are binding. But in the judicial world (i.e., Article III), Social Security Rulings are not "binding" because Congress has not allowed the court to enforce a policy against the agency. To hold otherwise would mean that if an agency promulgated a regulation saying that its policies were "binding" on the agency, then all the agency's policies that it considered binding would have the force and effect of law even though those policies did not undergo the rigorous notice and comment rulemaking process under 5 U.S.C. § 553. This cannot be. An agency has the authority to enforce a policy as "binding" for its purposes, but a court cannot do so unless and until that policy receives the status of "law." Therefore, even if Plaintiff had appropriately raised the argument, it fails.

[54] ECF No. 18 at 7.

[55] *Id.* at 6 (quoting AR 34).

11

As alluded to previously, the ALJ is required to consider all medical source opinions and prior administrative medical findings and to articulate how persuasive the ALJ finds each of them.[56] The ALJ must articulate the consideration of the medical opinions and prior administrative findings using, as appropriate, the following factors identified in the applicable regulation: (1) supportability; (2) consistency; (3) the relationship of the medical source to the claimant; (4) the source's area of specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative finding.[57] The first two factors—supportability and consistency—are the most important.[58] Supportability refers to the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations.[59] Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and nonmedical sources in the claim.[60] The ALJ *must* explain in the decision how the ALJ considered the factors of supportability and consistency for a medical source's medical opinions or prior administrative medical findings.[61]

---

[56] 20 C.F.R. § 404.1520c(a)-(b).

[57] 20 C.F.R. § 404.1520c(c).

[58] 20 C.F.R. § 404.1520c(b)(2); *see also Cornpeach v. Kijakazi*, 2:21-cv-00166-DAK, 2021 WL 5450783, at *5 (D. Utah Nov. 22, 2021) ("Persuasiveness is determined primarily based on an opinion's supportability and consistency, and the ALJ must explain how he considered those factors.").

[59] 20 C.F.R. § 404.1520c(c)(1).

[60] 20 C.F.R. § 404.1520c(c)(2).

[61] 20 C.F.R. § 404.1520c(b)(2).

The ALJ *may*, but is not generally required to, explain how he considered the remaining factors bearing on persuasiveness.[62]

The ALJ's consideration of Dr. Barnett's report met these standards. In finding Dr. Barnett's report persuasive, the ALJ reasonably explained how he considered the report using the factors of supportability and consistency. Regarding supportability, the ALJ explained that Dr. Barnett's report was supported by her examination findings.[63] In terms of consistency, the ALJ expressly noted that Dr. Barnett's report was consistent with the opinions of the state agency psychological consultants, the overall record, and Plaintiff's own statements, which confirmed that his primary concerns were physical.[64] The legal standards require no more than this.

Instead of seriously challenging the ALJ's compliance with the applicable regulations, Plaintiff's arguments are essentially an invitation to reweigh the evidence, which the court must reject. "In reviewing the ALJ's decision, [the court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[65] From an evidentiary standpoint, the only issue

---

[62] *Id*. The ALJ is *required* to discuss these additional factors only if there are "two or more medical opinions or prior administrative medical findings about the same issue [that] are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. § 404.1520c(b)(3).

[63] AR 34.

[64] *Id*.

[65] *Madrid*, 447 F.3d at 790 (quotations and citation omitted).

relevant to the court is whether substantial evidence exists in the record to support the ALJ's conclusions.[66]

## CONCLUSION AND RECOMMENDATION

Having determined that the ALJ's conclusions and findings are free from legal error and supported by substantial evidence, the undersigned HEREBY RECOMMENDS that the district court AFFIRM the Commissioner's decision.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.[67] The parties must file any objection to this Report and Recommendation within fourteen days after being served with a copy of it.[68] Failure to object may constitute waiver of objections upon subsequent review.

DATED this 20th day of May 2022.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge

---

[66] *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (providing that the court reviewing the ALJ's decision reviews "only the sufficiency of the evidence, not its weight" (emphasis omitted)); *Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (alteration in original) (quotations and citations omitted)).

[67] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

[68] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).